UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>D&A CORPORATION d/b/a BAKERSFIELD WHOLESALE FOODS, a California Corporation, ABDO AEZAH, an individual, MALAKA M. AEZAH, an individual, DAVID AEZAH, an individual, and DOES 1 THROUGH 100, inclusive,<br><br>        Defendants. | 1:04-cv-06737 OWW TAG<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT DAVID AEZAH'S MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S ALTER EGO CLAIM (DOC. 101) |

## I. **INTRODUCTION**

Defendant David Aezah ("David Aezah") moves pursuant to Rules 12(b)(6) and 12(f) to dismiss and strike portions of the Second Amended Complaint of Plaintiff, American Express Travel Related Services Company, Inc. ("Plaintiff" or "American Express").

//

## II. **PROCEDURAL HISTORY**

This cause of action arises out of the alleged non-payment of approximately $3.68 million in charges made by certain Defendants to their American Express credit cards.  Plaintiff filed its original complaint on December 21, 2004.  (Doc. 1, Compl.)  The operative complaint is the Second Amended Complaint, filed on June 8, 2005.[1]  (Doc. 96, Second Am. Compl.) Plaintiff's claims as set forth in the Second Amended Complaint are:  (1) breach of contract against Bakersfield Wholesale; (2) account stated against Bakersfield Wholesale; (3) breach of contract against all individual defendants (except David Aezah); (4) book account against all defendants (except David Aezah); (5) unjust enrichment against all defendants; (6) common law fraud against Bakersfield Wholesale and Abdo Aezah; (7) piercing the corporate veil against Abdo Aezah and David Aezah; and (8) fraudulent conveyance against Bakersfield Wholesale, Abdo Aezah, and David Aezah.

On August 3, 2005, default judgment was entered against Bakersfield Wholesale and Abdo Aezah in the amount of $3,683,320.97.  The only defendants remaining in this action are David Aezah and Malaka Aezah.  David Aezah moves pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure to dismiss portions of the Second Amended Complaint.  (Doc. 101,

---

[1] Plaintiff was granted leave to file a Second Amended Complaint on June 3, 2005 (Doc. 94, Minute Order), and filed a Second Amended Complaint by stipulation and with the permission of the court on June 8, 2005 (Doc. 96, Second Am. Compl.)

**2**

Def.'s Mot.; Doc. 102, Def.'s Mem.)  Specifically, David Aezah moves to dismiss Plaintiff's seventh claim for relief, i.e., piercing the corporate veil, and moves to strike all allegations relating to his alter ego liability.  Plaintiff opposes the motion. (Doc. 120, Pl.'s Opp.)  Defendant replied.  (Doc. 125, Def.'s Reply)

Oral argument was heard on September 26, 2005.  Steven M. Koch, Esq., appeared on behalf of American Express.  Douglas Tucker, Esq., appeared on behalf of Defendant David Aezah.

### III.  **SUMMARY OF PLEADINGS**

Plaintiff alleges that Abdo Aezah obtained several corporate credit cards on behalf of his corporation, Bakersfield Wholesale. Abdo Aezah is the sole shareholder of Bakersfield Wholesale. Abdo Aezah and Bakersfield Wholesale purchased approximately $3.68 million worth of cigarettes from Costco.  (Doc. 96, Second Am. Compl. ¶ 16)  Plaintiff further alleges that Abdo Aezah and Bakersfield Wholesale transferred the cigarettes and/or the proceeds from the sale of the cigarettes to third parties, and have secreted the proceeds.  (*Id*. at ¶ 39)

Four credit cards associated with the Bakersfield Wholesale corporate account were issued to D&A Corporation, Malaka Aezah, Fahd Aizah, and Abdo Aezah.  (*Id*. at ¶ 16)  No card was issued to David Aezah.  As of the end of October 2004, there was a balance of $109,762 owed on the card issued in Abdo Aezah's name; $46,834.26 owed on the card of Defendant Malaka; and $35,033.75 owed on the card of Fahd.  (Doc. 96, Second Am. Compl. ¶¶ 23-27)

On November 5 and 7, 2004, American Express received electronic payments by computer of those amounts for each account. However, approximately one month later, on December 4, 2004, the bank that issued these payments to American Express reversed the payments due to insufficient funds, resulting in nonpayment. American Express closed the accounts on December 2, 2004.[2] During the time between early November and December 2 (when the accounts were closed), Abdo, Fahd, and Malaka continued to use their cards and proceeded to charge an additional $2,278,972.11 to the cards. The total amount charged by the cardholders was $3,683,320.97. On August 3, 2005, default judgment was entered against Abdo and Bakersfield Wholesale in the amount of $3,683,320.97.

This motion relates to Plaintiff's alter ego claim against David Aezah. David Aezah is Abdo Aezah's brother. (*Id*. at ¶ 9) Plaintiff alleges that, although David Aezah was not a cardholder, he "was involved with and/or ha[d] knowledge about Abdo Aezah's scheme to secrete [sic] the proceeds from the sale of cigarettes to render Abdo and Bakersfield Wholesale judgment proof in order to defraud American Express." (*Id*. at ¶¶ 40, 45)

Plaintiff's substantive claims against David Aezah are unjust enrichment and fraudulent conveyance. Specifically, Plaintiff alleges that on August 27, 2004, Abdo signed a Grant Deed transferring the property known as the "Warehouse Property" to David for inadequate or no consideration. (*Id*. at ¶¶ 10, 34) Plaintiff also alleges that "according to the Grant Deed recorded

---

[2] American Express does not explain why the accounts were closed on December 2, 2004, even though the bank did not inform it of the reversal until two days later, on December 4, 2004.

**4**

with the clerk of Kern County on September 14, 2004, the transfer [of the Warehouse Property] was a 'gift' for which Abdo 'received nothing in return.'" (*Id*. at ¶ 35)  The Warehouse Property is and was the principal place of business for Bakersfield Wholesale. (*Id*. at ¶ 33)  On January 6, 2005, Abdo Aezah transferred his home residence ("Abdo Residence") to David Aezah for no consideration. (*Id*. at ¶ 10)  On March 21, 2005, David Aezah transferred the Abdo Residence back to Abdo in response to the motion for contempt.

    The allegations in the Second Amended Complaint that appear to relate to American Express' alter ego claim against David Aezah include the following.  On January 3, 2005, David Aezah signed a "Notice to Creditors of Bulk Sale," which stated that on January 21, 2005, Bakersfield Wholesale would transfer its entire inventory to David Aezah. (*Id*. at ¶ 10, 46)  American Express alleges that the sale referenced in the bulk sale notice never took place, but that Abdo Aezah nevertheless transferred the inventory, goodwill, equipment, records, corporate opportunities, and all other Bakersfield Wholesale assets to David Aezah for little or no consideration at some other time. (*Id*. at ¶¶ 10, 47)  Plaintiff alleges that included among the assets transferred to David Aezah were the cigarettes purchased from Costco and/or the proceeds derived from the sale or transfer of those cigarettes. (*Id*. at ¶ 51)

    Plaintiffs also allege that in early 2005, the sign on the Warehouse property advertising "Bakersfield Wholesale Groceries" was removed and replaced by a sign reading "Bakersfield Grocery Wholesalers." (*Id*. at ¶ 50)  Plaintiff believes that

"Bakersfield Grocery Wholesalers" is either a new d/b/a for Bakersfield Wholesale or is a separate corporate entity that David Aezah manages, controls and/or owns, and which has taken over all of the assets of Bakersfield Wholesale.  (*Id*. at ¶ 51)

Plaintiff's allegations as stated in the seventh claim for relief are as follows:  David Aezah (1) has taken control and possession of all of the assets of Bakersfield Wholesale; (2) has created a new corporate entity from which he is operating as successor to Bakersfield Wholesale; (3) exerts complete control over the successor corporate entity; (4) failed to maintain corporate formalities with respect to Bakersfield Wholesale and the successor entity; and (5) undercapitalized Bakersfield Wholesale and its successor entity, leaving it with little or no assets and insufficient cash flow to pay for its expenses.  (*Id*. at ¶¶ 111-115)

### III.   LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is disfavored and rarely granted:  "[a] complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).  In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable

inferences in favor of the nonmoving party." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).  For example, matters of public record may be considered under Fed. R. Civ. P. 201, including pleadings, orders and other papers filed with the court or records of administrative bodies.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV.  ANALYSIS

### A.  California Law Regarding Alter Ego Liability.

The alter-ego doctrine allows a court to disregard the corporate entity in cases where the corporation is used by an individual or individuals to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.  9 Witkin, *Summary of California Law*, Corporations § 12. The purpose of the alter ego doctrine is "to prevent defendants who are the alter egos of a sham corporation from escaping personal liability for its debts."  *Hennessey's Tavern, Inc. v.*

7

*Amer. Air Filter Co.*, 204 Cal. App. 3d 1351, 1358 (1988); *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 994 (1995) ("[A]lter ego is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize its corporate status would defeat the rights and interests of third parties."); *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985) ("'The law of this state is that the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons.'" (quoting *Kohn v. Kohn*, 95 Cal. App. 2d 708, 720 (1950))).

Two elements are generally required for alter ego liability to apply: "'(1) that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'" *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 837 (1962); *Mesler*, 39 Cal. 3d at 300; *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992); *Talbot v. Fresno-Pacific Corp.*, 181 Cal. App. 2d 425, 432 (1960).

Alter ego liability is an equitable doctrine. *Talbot*, 181 Cal. App. 2d at 432; *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1248 (1991). Whether alter-ego liability will be imposed necessarily depends upon the facts and circumstances of each case. *Talbot*, 181 Cal. App. 2d at 432; *Las Palmas*, 235 Cal. App. 3d at 1248.

//
//
//

**B.   <u>Whether American Express States a Claim for Alter Ego Liability as to David Aezah.</u>**

American Express seeks to hold David Aezah liable for the charges made to the corporate credit cards associated with Bakersfield Wholesale's American Express account. American Express does not allege that David Aezah made any credit card charges himself. The only substantive claims for relief American Express alleges against David are unjust enrichment and fraudulent conveyance. At issue here is whether American Express has alleged sufficient facts to support an alter ego theory of liability against David Aezah for the charges made by Bakersfield Wholesale and the other Defendants to the credit cards.

David Aezah initially argued that American Express failed to allege he had any actual ownership interest in the corporation. David Aezah's initial position was based on the argument that alter ego liability can only attach where there is actual corporate ownership. American Express does not dispute the ownership requirement under California law for alter ego liability. However, American Express argues that actual ownership is not necessary, but that instead, equitable ownership is sufficient. American Express argues it has sufficiently alleged equitable ownership. David Aezah does not dispute that equitable ownership could establish the first element, but argues that American Express nevertheless fails to allege facts to support any type of ownership on his part in Bakersfield Wholesale, either equitable or actual, during the time the allegedly fraudulent credit card charges were made.

The alter ego doctrine in California is an equitable, fact-

9

specific doctrine. The first prong of the alter-ego test requires "such a unity of interest and ownership" between the corporation and the individual "that the separate personalities of the corporation and the individual no longer exist." *Associated Vendors*, 210 Cal. App. 2d at 837; *see also Mid-Century Ins.*, 9 Cal. App. 4th at 1212. The "interest and ownership" prong turns on a number of different considerations, depending upon the facts of the case. A threshold question, however, is whether the individual alter ego has an ownership interest in the corporation. If there is no ownership interest, then there is no alter ego liability. *Riddle v. Leuschner*, 51 Cal. 2d 574, 580 (1959). Two Ninth Circuit Court of Appeals opinions cited *Riddle* cited for this principle. *Sec. and Exch. Comm'n v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) ("Ownership is a prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'"); *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) ("Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest. If an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her.").

American Express' amended complaint contains few facts that relate to David Aezah's purported equitable ownership in the operations of Bakersfield Wholesale. In its brief, American Express cites to no portion of its complaint that contains allegations of an ownership interest. The fact section of American Express' opposition is little more than a cut-and-paste of most of the factual allegations from its complaint, regardless of whether they relate to the alter ego claim.

Nevertheless, a review of the complaint reveals several alleged facts that could be construed to support American Express' alter ego theory:  (a) Abdo Aezah's transfer to David Aezah of Bakersfield Wholesale's inventory, goodwill, equipment, records, corporate opportunities, and all other assets, including the cigarettes and/or the proceeds derived from the sale of the cigarettes (*id*. at ¶¶ 10, 47, 51); (b) Abdo Aezah's transfer to David Aezah of the property on which Bakersfield Wholesale is located (i.e., the Warehouse Property) (*id*. at ¶¶ 33, 35); (c) David Aezah's current management, control and/or ownership over a new d/b/a or a new corporate entity named "Bakersfield Grocery Wholesalers," evidenced by the replacement of the sign at the Warehouse Property that previously read "Bakersfield Wholesale" with one that now reads "Bakersfield Grocery Wholesalers" (*id*. at ¶¶ 50, 51).

These factual allegations ultimately do not support David Aezah's ownership interest in Bakersfield Wholesale for the purpose of imposing on him alter ego liability for the credit card charges to Bakersfield Wholesale's corporate account.  These events all alleged to have taken place *after* the allegedly fraudulent credit card charges were made.  Plaintiff seeks to hold David Aezah liable on an alter ego theory for charges made by Bakersfield Wholesale *before* David purportedly acquired any interest in the company.  No facts are alleged to support a theory that David had an ownership interest in Bakersfield Wholesale during the alleged wrongdoing.

The only facts alleged regarding the ownership of Bakersfield Wholesale during the alleged wrongdoing relate to

1 Abdo Aezah.  Plaintiff alleges Abdo Aezah is the "sole
2 shareholder" of Bakersfield Wholesale (Doc. 96, Second Am. Compl.
3 ¶ 6), that Bakersfield Wholesale is "100% owned by defendant
4 Abdo" (*id*. at ¶ 103), and that Abdo Aezah "exerted and continues
5 to exert complete domination and control over the activities of
6 Bakersfield Wholesale," (*id*. at ¶ 104).

7 Plaintiff has offered no persuasive argument as to why
8 *Riddle*, 51 Cal. 2d at 578, *Hickey*, 322 F.3d at 1128, and
9 *Firstmark*, 859 F.2d at 94, do not apply here.  These cases make
10 it clear that California law holds that ownership is a
11 prerequisite for alter ego liability to attach.  Plaintiff has
12 offered no basis upon which to distinguish these cases from this
13 case.

14 Defendant David Aezah's motion to dismiss Plaintiff's alter
15 ego claim is **GRANTED** with **LEAVE TO AMEND**.  The motion to strike
16 is **MOOT**.

### V.   CONCLUSION

20 For all the foregoing reasons, Defendant's motion to
21 dismiss Plaintiff's seventh claim for relief (piercing
22 the corporate veil) is **GRANTED** with **LEAVE TO AMEND**.
23 Any amended complaint shall be filed within ten (10)
24 days of electronic service of this order.
25 **SO ORDERED**.

**DATED: September 28___, 2005.**

                                   **/s/ OLIVER W. WANGER**

                                   _____

                                     **Oliver W. Wanger**
                             **UNITED STATES DISTRICT JUDGE**