IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,

Plaintiff,

vs.

D&A CORPORATION dba BAKERSFIELD WHOLESALE FOODS, et al.,

Defendants.

No. CV-F-04-6737 OWW/TAG

MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS DAVID AEZAH, BAKERSFIELD GROCERY WHOLESALE, AND DAVE AEZAH INVESTMENT, INC.'S MOTIONS TO DISMISS AND TO STRIKE (Docs. 254 & 255) AND DENYING PLAINTIFF'S CROSS-MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 (Doc. 263)

American Express Travel Related Services Company, Inc. (hereinafter referred to as American Express) has sued Defendants D&A Corporation dba Bakersfield Wholesale Foods ("Bakersfield Wholesale"), Abdo Aezah ("Abdo"), Malaka M. Aezeh, David Aezah ("David"), Bakersfield Grocery Wholesale ("Bakersfield Grocery"), David Aezah Investment, Inc. ("DAI"), and Does 1 - 100, inclusive, by the Third Amended Complaint (TAC) filed on February 23, 2007 (Doc. 158). The TAC was filed pursuant to the Stipulation and Order filed on February 12, 2007, which provided in pertinent part:

> 3. [David] Aezah consents to the filing by American Express of a third amended complaint in the ... California action without

                        **prejudice to Aezah's rights to move to dismiss the third amended complaint or any other substantive rights.**

**Before the Court are the motions to dismiss and to strike the TAC filed by David, Bakersfield Grocery Wholesale and David Aezah Investment, Inc. The motion to dismiss and strike was denied by oral rulings at the hearing on July 25, 2007 and Defendants were ordered to file an Answer to the TAC by August 7, 2007. Defendants timely filed their Answer to the TAC (Doc. 351). This Memorandum Decision and Order is intended to amplify the reasons stated at the hearing for denying the motion.**

**Defendants move to dismiss the Sixth, Seventh and Ninth Claims for Relief pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Pursuant to Rule 12(f), Federal Rules of Civil Procedure, Defendants move to strike the prayer for attorneys' fees and the Sixth Claim for Relief on the ground of res judicata and failure to comply with a Court Order. Also before the Court is American Express' cross-motion for sanctions pursuant to 28 U.S.C. § 1927.[1]**

**A. MOTION TO DISMISS.**

**1. GOVERNING STANDARDS.**

**A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729,**

---

**[1]American Express' cross-motion also seeks relief for discovery. This aspect of the cross-motion was resolved at the hearing.**

**732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."** ***Conley v. Gibson*****, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.** ***Robertson v. Dean Witter Reynolds, Inc.*****, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.** ***Thompson v. Davis*****, 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.** ***Ileto v. Glock, Inc.*****, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.** ***See Morley v. Walker*****, 175 F.3d 756, 759 (9th Cir.1999);** ***Jablon v. Dean Witter & Co.*****, 614 F.2d 677, 682 (9th Cir. 1980). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.** ***Parrino v. FHP, Inc*****, 146 F.3d 699, 705-706 (9th Cir.1988).**

**2. SIXTH CLAIM FOR RELIEF FOR COMMON LAW FRAUD.**

**The Sixth Claim for Relief is for common law fraud against Bakersfield Wholesale, Abdo and David.**

**a. FAILURE TO COMPLY WITH RULE 9(b), FEDERAL RULES OF CIVIL PROCEDURE.**

**David moves to dismiss the Sixth Claim for Relief on the ground that the TAC does not satisfy the specificity pleading requirements for fraud set forth in Rule 9(b), Federal Rules of Civil Procedure.**

**Rule 9(b) requires that, in all averments of fraud, the circumstances constituting fraud be stated with particularity. One of the purposes behind Rule 9(b)'s heightened pleading requirement is to put defendants on notice of the specific fraudulent conduct in order to enable them to adequately defend against such allegations. *See In re Stac Elec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996). Furthermore, Rule 9(b) serves "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Id.***

**Rule 9(b) requires that allegations of fraud be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged to that they can defend against the charge and not just deny that they have done**

anything wrong. *Celado Int'l., Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846, 855 (C.D.Cal.2004); *see also Neubronner v. Milkin*, 6 F.3d 666, 671 (9th Cir.1993). As a general rule, fraud allegations must state "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986). As explained in *Neubronner v. Milken*, *supra*, 6 F.3d at 672:

> This court has held that the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing partys' knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts ... However, this exception does not nullify Rule 9(b); a plaintiff who makes allegations on information and belief must state the factual basis for the belief.

b. ALLEGATIONS CONTRADICTED BY PRIOR PLEADINGS.

David asserts that the allegations in the TAC are "largely contradicted" by allegations in the Complaint and Second Amended Complaint and evidence submitted in support of the default judgment against Abdo. David contends that these pleadings and evidence show that Abdo was solely responsible for the charges incurred and that Abdo was the sole owner of the business incurring the charges:

> • ...Abdo is the president and sole shareholder of defendant Bakersfield Wholesale, and controls all of the activities of defendant Bakersfield Wholesale." (SAC, ¶ 6);
>
> • "In or about May 2004, Abdo applied for and

**was granted a corporate credit card account at American Express on behalf of "Bakersfield Wholesale." In September 2004, Abdo applied for and was granted a corporate purchase card account on behalf of "D&A Corporation." (SAC ¶ 15)**

- **...Abdo is the president and sole shareholder of defendant Bakersfield Wholesale, and controls all of the activities of defendant Bakersfield Wholesale." (SAC, ¶ 6);**

- **"In or about May 2004, Abdo applied for and was granted a corporate credit card account at American Express on behalf of "Bakersfield Wholesale." In September 2004, Abdo applied for and was granted a corporate purchase card account on behalf of "D&A Corporation." (SAC ¶ 15)**

- **At Abdo's request, American Express issued three separate American Express corporate credit cards for Bakersfield Wholesale, one in the name of Abdo Aezah/Bakersfield Wholesale..., one in the name of Malaka Aezah/Bakersfield Wholesale...and one in the name of Fahd Aizah/Bakersfield Wholesale....At Abdo Aezah's request, American Express issued a corporate purchase card for defendants in the name of D&A Corporation." (SAC ¶ 16)**

- **...Abdo has represented and admitted to American Express that *he made* all charges on the Accounts and that *he is the only individual who used the corporate credit cards* issued to Bakersfield Wholesale. Abdo is thus responsible for all the charges on the Accounts. (SAC ¶ 18) [Emphasis added]**

- **The charges at issue were made on Bakersfield Wholesale's corporate credit cards by Abdo, and were properly reported on monthly statements of account, which were mailed to and received by Bakersfield Wholesale and Abdo. (Pl. Pts & Auth. In Support of Motion for Summary Judgment against Abdo Aezah and Bakersfield Wholesale, 3:13-18 ("Pl. MSJ".)**

> • You (Abdo) as the Corporate Cardmember are responsible for all charges billed to your account.... To the extent that you, as the Corporate Cardmember, fail to honor any of the obligations under the Agreement, we [American Express] reserve the right to collect the amount of such Charges directly from you. (Pl. MSJ 12:11-20)
>
> • Defendant (Abdo) Aezah is the president and sole shareholder of defendant Bakersfield Wholesale, which is a California Corporation. (Pl. Statement of Undisputed Facts ISO Motion for Summary Judgment, ("Pl. SUD") ¶ 2.)
>
> • In September 2004, (Abdo) Aezah applied for and was granted a corporate purchase card account on behalf of D&A Corporation. (Pl. SUD ¶ 5)
>
> • Abdo is the only individual who used the credit cards to make the purchases reflected on the Accounts. (Pl. SUD ¶ 9)

David argues that, when American Express learned during the debtor's examination that Abdo and Bakersfield Wholesale were judgment proof and that David had independent assets, American Express seeks to go after David, despite having alleged that Abdo bore sole responsibility for the charges. In addition, David argues that prior pleadings filed in this action demonstrate that David was not a signatory to any of the American Express charge cards and American Express has not alleged that it issued a charge card to David. David contends:

> Because each of the allegations in the Plaintiff's Sixth Claim relate exclusively to the purchases of cigarettes, and Plaintiff has never demonstrated that Defendant David Aezah ... had purchased a single thing or was otherwise involved in any of the transactions at issue or made upon the American Express Cards, Plaintiff has simply failed to demonstrate that committed [sic] any fraud

> **against American Express regarding the purchase of the cigarettes.**

**David cites no authority that these evidentiary contentions have any relevance to whether the Sixth Claim for Relief states a claim upon which relief can be granted.**

**David appears to contend that the doctrine of judicial estoppel precludes the claim of fraud against him. As explained in *Wagner v. Professional Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir.2004):**

> **'Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.' ... Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.' ... Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion.**

**The Ninth Circuit restricts the application of judicial estoppel "to cases where the court relied on, or "accepted," the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir.2001). If David intends to assert judicial estoppel, the defense cannot be advanced in a Rule 12(b)(6) motion because application of the doctrine is factual as well as legal, unless the face of the pleadings establish the defense.**

**Further, the allegations of the TAC allow the inference that American Express subsequently obtained information that**

**contradict these prior allegations and representations. Because of this subsequently discovered information, the inconsistent allegations and/or representations are not fatal or irreconcilable and do not negate the Sixth Claim for Relief as a matter of law.**

**c. DEFAULT JUDGMENT RES JUDICATA.**

**David argues that the Sixth Claim for Relief must be dismissed because the default judgment entered in this action against Abdo and Bakersfield Wholesale on August 3, 2005, (Docs. 103, 109 & 110), definitively established that Abdo and Bakersfield Wholesale, were exclusively responsible for the charges on the American Express cards. David argues that the default judgment "serves as res judicata (claim preclusion), as to the allegations made" in the Sixth Claim for Relief. Other than making this assertion, David provides no legal authority or analysis.**

**Res judicata is an affirmative defense. Rule 8(c), Federal Rules of Civil Procedure. Therefore, this ground for dismissal may be upheld only if is established on the face of the complaint. *See Morley v. Walker*, *supra*, 175 F.3d at 759; *Jablon v. Dean Witter & Co.*, *supra*, 614 F.2d at 682.**

**As explained in *Headwaters Inc. v. U.S. Forest Service*, 399 F.3d 1047, 1051-1052 (9th Cir.2005):**

> **'The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' ... 'The application of this doctrine is central to**

> **the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction.' ... The preclusion doctrine encompasses a vindication of public rights by 'avoiding inconsistent results and preserving judicial economy.'**
> **....**
>
> **The elements necessary to establish *res judicata* are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between the parties.**

**There is no question that the default judgment is a final judgment on the merits. With regard to "identity of claims", the Court considers:**

> **(1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. The last of these criteria is the most important.**

***Id.* at 1052.**

**American Express moved for and obtained a default judgment in the amount of $3,683,320.97 against Abdo and Bakersfield Wholesale on the claims for breach of contract and account stated alleged in the First Amended Complaint (Docs. 103 & 109). The common law fraud claim against the moving Defendants has different elements and is not identical to these claims against Abdo and Bakersfield Wholesale.**

**With regard to privity, the Ninth Circuit in *In re Schimmels*, 127 F.3d 875, 881 (9th Cir.1997):**

> **'Privity' - for the purpose of applying the**

> **doctrine of *res judicata* - is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.' ... Federal courts have deemed several relationships 'sufficiently close' to justify a finding of 'privity' and, therefore, preclusion under the doctrine of *res judicata*:**
>
> > **First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.**
>
> **... In addition, 'privity' has been found where there is a 'substantial identity' between the party and the nonparty ...; where the nonparty 'had a significant interest and participated in the prior action,' ...; and where the interests of the nonparty and party are 'so closely aligned as to be "virtually representative,"' ... Finally, a relationship of privity can be said to exist when there is an 'express or implied legal relationship by which the parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues.' ....**

**Even if, *arguendo*, this element of res judicata were satisfied, because the claims are not identical, the default judgment against Abdo and Bakersfield Wholesale is not res judicata barring the Sixth Claim for Relief. Res judicata based on the default judgment does not precludes statement of a claim upon which relief can be granted on the Sixth Claim for Relief.**

**The motion to dismiss the Sixth Claim for Relief is DENIED.**

**3. SEVENTH CLAIM FOR RELIEF FOR PIERCING CORPORATE VEIL.**

**The Seventh Claim for Relief is for piercing the corporate veil against David and DAI.**

**a. BARRED BY RES JUDICATA.**

**By Order filed on September 28, 2005 (Doc. 127), the Seventh Claim for Relief against David for piercing the corporate veil alleged in the Second Amended Complaint was dismissed with leave to amend within ten days of service of the Order. In pertinent part, the Order ruled:**

> **... [A] review of the [second amended] complaint reveals several alleged facts that could be construed to support American Express' alter ego theory: (a) Abdo Aezah's transfer to David Aezah of Bakersfield Wholesale's inventory, goodwill, equipment, records, corporate opportunities, and all other assets, including the cigarettes and/or the proceeds derived from the sale of the cigarettes ...; (b) Abdo Aezah's transfer to David Aezah of the property on which Bakersfield Wholesale is located (i.e., the Warehouse Property) ...; (c) David Aezah's current managemetn, control and/or ownership over a new d/b/a or a new corporate entity named 'Bakersfield Grocery Wholesalers,' evidenced by the replacement of the sign at the Warehouse Property that previously read 'Bakersfield Wholesale' with the one that now reads 'Bakersfield Grocery Wholesalers' ....**
>
> **These factual allegations ultimately do not support David Aezah's ownership interest in Bakersfield Wholesale for the purpose of imposing alter ego liability for the credit card charges to Bakersfield Wholesale's corporate account. These events all alleged [sic] to have taken place *after* the allegedly fraudulent credit card charges were made. Plaintiff seeks to hold David Aezah liable on an alter ego theory for charges made by**

> **Bakersfield Wholesale *before* David purportedly acquired any interest in the company. No facts are alleged to support a theory that David had an ownership interest in Bakersfield Wholesale during the alleged wrongdoing.**
>
> **The only facts alleged regarding the ownership of Bakersfield Wholesale during the alleged wrongdoing relate to Abdo Aezah. Plaintiff alleges that Abdo Aezah is the 'sole shareholder' of Bakersfield Wholesale ..., that Bakersfield Wholesale is '100% owned by defendant Abdo' ..., and that Abdo Aezah 'exerted and continues to exert complete domination and control over the activities of Bakersfield Wholesale,' ....**
>
> **Plaintiff has offered no persuasive argument as to why *Riddle*, 51 Cal.2d at 578, *Hickey*, 322 F.3d at 1128, and *Firstmark*, 859 F.2d at 94, do not apply here. These cases make it clear that California law holds that ownership is a prerequisite for alter ego liability to attach. Plaintiff has offered no basis upon which to distinguish these cases from this case.**
>
> ...
>
> **For all the foregoing reasons, Defendant's motion to dismiss Plaintiff's seventh claim for relief (piercing the corporate veil) is GRANTED with LEAVE TO AMEND. Any amended complaint shall be filed within ten (10) days of electronic service of this order.**

**American Express did not file a Third Amended Complaint within the time set forth in the Order. On October 27, 2005, David filed an Answer to the Second Amended Complaint, alleging with regard to the Seventh Claim for Relief that "David ... declines to respond to any such allegations against him, as they have either been stricken or dismissed or both."**

**David contends that the claim for piercing the corporate**

**veil has been previously adjudicated and decided and is res judicata in this action because of the failure to timely amend. David argues that the Seventh Cause of Action in the TAC should be dismissed because of American Express's "willful failure" to amend, move for reconsideration, or appeal the September 28, 2005 Order, it's "intentional election" not to prosecute this action for more than a year and a half, and because of David's intervening Answer to the Second Amended Complaint. David contends:**

> **[American Express] should be barred from attempting to resurrect this claim in violation of the Court's clear directions and orders. It is blatantly evident that the only reason that Plaintiff again seeks to resurrect and reassert this claim because it has discovered through its collection activities against Abdo that Abdo has insufficient assets to permit full recovery, and thus the Plaintiff seeks to recover the amount it irresponsibly advanced to Abdo from other individuals, which presently consists of Abdo's brother.**

**David cites no authority in support of his contention that res judicata bars the Seventh Claim for Relief in the TAC and the Court's independent research finds none.**

**American Express responds that "[i]t is well established that an order dismissing a claim for failure to state a cause of action is a dismissal without prejudice."**

**That may be so, but the case cited by American Express, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir.2003), does not so hold.**

**American Express also refers to Rule 15(d), Federal Rules of**

**Civil Procedure:**

> **Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading, setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.**

**American Express argues that ten days to amend set forth in the September 28, 2005 Order "merely obviated the necessity of complying with the procedural hurdle of making a motion under Fed.R.Civ.P. if such an amended complaint could be filed within ten days ... [and] does not prevent American Express from filing an amended complaint outside that period if the amended pleading otherwise complies with Fed.R.Civ.P. 15."[2]**

**Rule 15(a), Federal Rules of Civil Procedure, provides that "leave [to amend] shall be freely given when justice so requires." "The purpose of pleading is 'to facilitate a proper decision on the merits' ... and not erect formal and burdensome impediments to the litigation process. Unless undue prejudice to the opposing party will result, a trial judge should ordinarily**

---

**[2]American Express also contends the Stipulation and Order filed on February 12, 2007, allowing to American Express file the TAC "without prejudice to [David's] right to move to dismiss the third amended complaint or any other substantive rights", is limited to "substantive" objections and constitutes a waiver by David of any procedural objections to the TAC. However, the Stipulation does not so read and cannot be so construed.**

**permit a party to amend its complaint."** ***Howey v. United States*, 481 F.2d 1187, 1990 (1973). However, "[t]his strong policy toward permitting the amendment of pleadings ... must be tempered with considerations of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' <u>Foman v. Davis</u>, 371 U.S. 178, 182 ... (1962)." *Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1991).**

**American Express argues that the Seventh Claim for Relief in the TAC does not violate any of the factors set forth by the Supreme Court in *Foman*.**

**"Prejudice is the 'touchstone of the inquiry under rule 15(a) ... Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, *supra*, 316 F.3d at 1052. "The party opposing leave to amend bears the burden of showing prejudice." *Serpra v. SBC Telecommunications, Inc.*, 318 F.Supp.2d 865, 870 (N.D.Cal.2004).**

**American Express contends that David is not prejudiced by the TAC and cannot demonstrate prejudice because American Express asserted similar claims under the same legal theory in the First Amended Complaint and the Second Amended Complaint and the facts supporting the alter ego claim are those supporting the claims**

**for fraudulent transfer, unjust enrichment and successor liability. *See Serpa, supra*, 318 F.Supp.2d at 872 (no prejudice when proposed amendment depends on same set of facts for other claims).**

**American Express contends that the Seventh Claim for Relief is not alleged in bad faith because it is not "merely seeking to prolong the litigation by adding new but baseless legal theories." *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 881 (9th Cir.1999). American Express asserts that "the Court has already held that the evidence shows 'clear and convincing' evidence of David's wrongful conduct."**

**American Express contends that it did not unduly delay in filing the TAC including the Seventh Claim for Relief. Delay alone is insufficient to justify denial of leave to amend. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir.1987). If discovery is not closed, undue delay does not exist. *See Abels v. JBC Legal Group, P.C.*, 229 F.R.D. 152, 156 (N.D.Cal.2005). American Express argues that the TAC was filed "only because the facts underlying the cause of action for alter ego were discovered bit by bit, over the last several months - largely from third parties and in the face of perjurious testimony by both Aezah brothers and by Abdo's strategic use of Fifth Amendment refusals to testify." American Express contends that David's assertion that American Express elected not to proceed with this action for more than a year and a half "is an outright falsehood." American Express asserts that, with the full**

**agreement of David's former counsel,**

> **it diligently pursued third parties for massive documentation that ultimately revealed the attempts to launder money in Mississippi and Yemen and the scheme to hide the Costco Cigarettes at the Fortress storage facility. It is David who has been delayed [sic] by secreting assets, hiding documents, refusing to appear for depositions, and perjuring himself when he does appear.**

**In so asserting, American Express submits the Declaration of Ira Glauber, one of its attorneys. Mr. Glauber avers in pertinent part:**

> **7. On October 5, 2005, I wrote to David's counsel at the time, Douglas Tucker, Esq. of the firm of Kimble, MacMichael & Upton, and advised him that American Express could not amend the complaint until it takes discovery ... I stated in this letter as follows: 'I am writing to advise you that American Express will not be amending the complaint at this time. We reserve the right to amend the complaint at a later date should we uncover facts during discovery which support an amendment of the complaint.'**
>
> **8. David's answer to the second amended complaint (which contained a claim for fraudulent conveyance against him) was served in the fall of 2005. In October 2005, American Express served its initial disclosures under Fed.R.Civ.P 26. In November 2005, it served document requests and interrogatories on David. In December 2005, American Express served David with a deposition notice for early February, 2006.**
>
> **9. David did not produce documents responsive to the document request until late February 2006, which required that his deposition be adjourned. David also failed to produce large quantities of documents, especially critically important bank statements. I wrote a letter to David's lawyer, Mr. Tucker, about this on March 8, 2006 ....**

**10. In the spring of 2006, American Express served non-party subpoenas on Citibank, Wells Fargo Bank, and Bank of America for the checking account statements of David, Abdo, and Bakersfield Wholesale. Those documents were not produced until the early summer 2006. Rather than oppose such discovery, David's then counsel, Mr. Tucker, wrote letters to the banks stating that they were authorized to fully comply with discovery. It was from the production of documents by these banks that we obtained records indicating that David had transferred more than $1,300,,000 into his account, all in one hundred dollar bills (this, in turn, led to our discovery of his purchase of the Mississippi Property) and of the transfers of hundreds of thousands of dollars in cash to Yemen.**

**11. Despite the fact that the banks had not produced their documents, in order to press forward with discovery, I served David's counsel with a deposition notice scheduling David's deposition to commence on May 4, 2006. David's counsel and I had agreed on this date in late March 2006. However, on the eve of the deposition, David's counsel cancelled the deposition, on the pretext that David was in Yemen. I wrote a letter to Mr. Tucker complaining about this on April 28, 2006 ....**

**12. American Express had to notice David's deposition two more times, once in late July 2006, and once again for September 2006, before David finally agreed to be deposed ....**

**13. On September 13, 2006, David finally appeared for his deposition, but after a half day of questions concerning checks totaling hundreds of thousands of dollars that David wrote to unknown persons in Yemen, David's counsel, Mr. Tucker, advised me that he was cutting off the deposition until David had time to consult with criminal counsel about the possibly asserting his Fifth Amendment rights. David then replaced Mr. Tucker as his counsel with Gary Huss, Esq. of Wild, Tipton and Carter.**

**14. On October 9 and 10, 2006, American Express continued David's deposition, and first had an opportunity to ask him about a $340,000 cancelled check paid to him from Traveler's Insurance Company in the fall of 2005. After pressing David for further disclosure concerning an insurance claim that he submitted to Travelers for cigarettes destroyed in a fire at a storage facility in July 2005, we learned that David was personally and intimately involved with the fraudulent conveyance of the cigarettes purchased on the American Express card.**

**15. Following this, we deposed six additional witnesses in January 2007, including Abdo, David, the manager of the storage facility, and a police officer from the Bakersfield Police Department. These depositions and the documents obtained from defendants and from the banks and other third parties finally enabled American Express to uncover the entirety of David's scheme to defraud American Express. It was on the basis of this discovery that American Express amended the complaint for a third time through the filing of the TAC in late February 2007.**

...

**18. It should be readily apparent to the Court that American Express could not have amended the complaint to re-plead the alter ego claim within 10 days of the September 28, 2005 ruling on David's first motion to dismiss. At that point, no discovery had yet been taken, and American Express did not have the facts on which to base any additional allegations of alter ego liability. We advised David's counsel in writing that further amendment of the complaint would have to await discovery ... and then we diligently engaged in discovery on the existing claim (the one for fraudulent transfer). It was only when discovery was substantially completed in early 2007, did American Express have all the facts to allege an alter ego claim against David.**

...

**20. It should also be readily apparent to the Court that the March 31, 2005 Discovery Scheduling Order became overtaken by events and was not applicable to David. That Order was entered before David had even responded to the first amended complaint. It set a discovery cut-off of August 31, 2005. It is clear that this cut-off only applied to the defendants who had already appeared in the action as of the date the order was signed. David had not even answered any complaint as of August 31, 2005, and the court did not rule on his motion to dismiss until September 28, 2005.**

**21. Once the Court issued that ruling and David answered the [second amended] complaint, American Express diligently pursued discovery by serving a document request and interrogatories on David, deposition notices on David, and third-party subpoenas. David's prior counsel, Mr. Tucker, ... produced documents, answered interrogatories, and cooperated in the production of documents by the non-party banks. He also attempted to get his client to appear for deposition despite his client's dilatory tactics. At no time did Mr. Tucker ever state that the action should be dismissed because American Express failed to pursue discovery.**

**22. Moreover, neither Mr. Tucker nor Mr. Huss ever objected to American Express' discovery as beyond the Court's discovery deadline. David obviously waived any objection to such discovery, or any amendment of the complaint that resulted therefrom.**

**23. In fact, Mr. Tucker and I discussed the court's scheduling order on several occasions in late 2005 and 2006 (before he was replaced by Mr. Huss following the September 13, 2006 deposition of David). We were both of the opinion that it did not pertain to David because his answer was not served until after the August 31, 2005 discovery cut-off date contained in the initial Scheduling Conference Order. We also were both of the opinion that as long as both sides were not having discovery fights, and were proceeding**

> **with discovery in a professional fashion, there was no need to burden the Court with a request for a new schedule. We specifically discussed this at the time of David's September 2006 deposition, and agreed that after that deposition was completed, we would jointly contact the Court and give it a status report on where things stood in the case. Before that could occur, David fired Mr. Tucker. I was told one of the reasons for this is that David believed that Mr. Tucker was being too cooperative with American Express.**
>
> **24. Given the above facts, I was shocked to read David's most recent motion to dismiss. It is obvious that Mr. Huss did not read the correspondence and discovery requests exchanged between me and his predecessor counsel for David, and has no understanding of the procedural history of this matter. If he did, he would never have made the following outlandishly false statement: 'Following this Court's granting the Plaintiff's Default Judgment against Abdo and Bakersfield Wholesale, the Plaintiff essentially abandoned their claim and action against David and the other defendants. No action of any kind was taken in this case involving David from October 2005 through the filing of the current complaint in March 2007 - approximately a year and a half later.' This statement ignores the document request, interrogatories, and deposition notice served on David in late 2005, the document production engaged in by David in early 2006, and American Express' attempts to get David to produce all of his documents and appear for a deposition in mid and late 2006.**

**David objects to consideration of Mr. Glauber's declaration in resolving the motion to dismiss. However, while the declaration cannot be considered in resolving whether the TAC or the Seventh Claim for Relief state a claim upon which relief can be granted without converting the motion to one for summary judgment, Mr. Glauber's declaration may be considered in**

**determining whether the amendment should be allowed for purposes of Rule 15, i.e., whether American Express unduly delayed in amending the complaint, and for purposes of determining whether the failure to timely comply with the September 25, 2005 Order may be excused or is grounds for dismissal for failure to prosecute.**

**With regard to futility, that ground for denial of leave to amend depends upon whether the Seventh Claim for Relief states a claim under Rule 12(b)(6).**

**In the absence of authority that res judicata bars the re-alleging of the alter ego cause of action, David is not entitled to dismissal on this ground. If David had not stipulated to the filing of the TAC, American Express would have had to move for leave to file it pursuant to Rule 15 or Rule 16, Federal Rules of Civil Procedure. The fact that American Express could have so moved negates any bar based on res judicata.**

**David alternatively argues that the Seventh Claim for Relief should be dismissed pursuant to Rule 41(b), Federal Rules of Civil Procedure, for failure to timely comply with a court order. David relies on *Yourish v. California Amplifier*, 191 F.3d 983 (9th Cir.1999).**

**However, *Yourish* involved an order dismissing a complaint with leave to amend. Here, the Second Amended Complaint remained viable as evidenced by David's Answer to it when time to amend the Seventh Claim for Relief elapsed and Mr. Glauber had advised Mr. Tucker that American Express did not intend to amend.**

**_Yourish_ has been clarified by the Ninth Circuit in _Edwards v. Marin Park, Inc._, 356 F.3d 1058, 1065 (9th Cir.2004):**

> **We believe that _Yourish_ (and _Ferdik_) can be understood as limited to circumstances in which the plaintiff did _not_, as _WMX Technologies_ recommends, give the court 'notice of intent not to file an amended complaint,' ... but simply failed to take any action. _Yourish_ and _Ferdik_ both arose when plaintiffs, given the opportunity to amend or be dismissed, did _nothing_. In that situation, resources continue to be consumed by a case sitting idly on the court's docket. The failure of the plaintiff eventually to respond to the court's ultimatum - either by amending the complaint or by indicating to the court that it will not do so - is properly met with the sanction of a Rule 41(b) dismissal. Where, however, the plaintiff makes an affirmative _choice_ not to amend, and clearly communicates that choice to the court, there has been no disobedience to a court's order to amend; as _Yourish_ itself noted, the plaintiff has the right to stand on the pleading ... Hence we understand the _Ferdik-Yourish_ rule to require a threatened Rule 12(b)(6) dismissal to ferment into a Rule 41(b) dismissal only upon the plaintiff's _inaction_. When the plaintiff timely responds with a formal notice of his intent not to amend, the threatened dismissal merely ripens into a final, appealable judgment.**

**Although American Express did not formally notify the Court of its decision not to amend the Seventh Claim for Relief as required by the September 28, 2005 Order, American Express did notify Defendants' then-counsel, Mr. Tucker, who then filed an Answer to the Second Amended Complaint. To dismiss the Seventh Claim for Relief in the TAC _now_ pursuant to Rule 41(b) based on the failure to timely amend pursuant to the September 28, 2005 Order does not make sense because the action remained viable and**

**was being prosecuted.**

**b. <u>INSUFFICIENT FACTS TO DEMONSTRATE EQUITABLE DOCTRINE SHOULD BE IMPOSED AGAINST DAVID</u>.**

**One of the required requirements for alter ego liability is that "there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist". *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1212 (1992). A threshold question is whether the alleged alter ego had an ownership interest in the corporation. If there is no ownership interest, there is no alter ego liability. *Riddle v. Leuschner*, 51 Cal.2d 574, 580 (1959); *see also SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir.2003)("Ownership is a prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.'"); *Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir.1988)("Ownership of an interest in the corporation is an essential part of the element of unity of ownership and interest. If an individual's ownership is not established, the corporation's obligations cannot be imposed on him or her.").**

**David argues that the Seventh Claim for Relief fails to state a claim because the only evidence of his ownership of Bakersfield Wholesale is the allegation in Paragraph 13 that David and Abdo executed a written "Declaration" dated September 19, 2004, which stated that in exchange for the satisfaction of a $150,000 loan from David to Abdo, Abdo was transferring the Warehouse to David, and that "[t]he borrower [Abdo] no longer has**

**an interest of any king [kind] in this property or any business within it." David argues that this sentence from the Declaration is taken out of context and does not prove that David gained any ownership interest in Bakersfield Wholesale, but only that Abdo attempted to disclaim ownership. David asserts:**

> **This document is a declaration that follows the close of escrow on the 402 California property, and the transfer of the property into David's name. It states that because of these events, David's loan of $150,000 to Abdo is satisfied, and that David will be responsible for taking over an existing mortgage loan against the property in the amount of approximately $280,000. It further states that Abdo, as the borrower, is not free from any liabilities or any loans against this property, including the loan which he borrowed from David five months previously in the amount of $150,000. 'The borrower no longer has an interest of any king [sic] in this property or any business within it.' Taken as a whole, this document was intended to serve the purpose of providing Abdo with written notice that he was no longer responsible for the loan he had received from David, and for the outstanding mortgage on the property.**

**David further argues that American Express cannot point to any concrete evidence of his acceptance of ownership of Bakersfield Wholesale, contending that American Express does not demonstrate (1) that any documentation was filed with the California Secretary of State, the County of Kern or other state agencies showing change of ownership; and (2) that any changes were made to required business insurance demonstrating change of ownership. California Business and Professions Code §§ 29975 *et seq.* pertain**

**to licenses for wholesalers.[3] Section 22975(a) provides that, "commencing June 30, 2004, every distributor and every wholesaler shall annually obtain and maintain a license to engage in the sale of cigarettes or tobacco products." Section 22975(c) provides in pertinent part:**

> **A license is not assignable or transferable. A person who obtains a license as a distributor or as a wholesaler who ceases to do business as specified in the license ... shall immediately surrender the license to the board.**

**David contends that American Express has not alleged or provided proof that Abdo surrendered the wholesaler license following the execution of the September 19, 2004 Declaration or that David has applied for and obtained the required license. David argues that the evidence of ownership alleged in the Seventh Claim for Relief "is ambiguous at best" and refers to allegations that Abdo continued to perform acts inconsistent with the disclaimer set forth in the Declaration:**

> **• "[a]t Abdo's request, American Express issued three separate American Express corporate credit cards for Bakersfield Wholesale...At Abdo Aezah's request, American Express also issued a corporate purchase card for defendants in the name of D&A Corporation..." (TAC, ¶ 26.)**
>
> **• "Abdo has repreresented and admitted to American Express that he made all of the charges on the Accounts and that he is the only individual who used the corporate credit cards issued to Bakersfield Wholesale. Abdo**

**[3]David cited California Business and Professions Code §§ 22972 *et seq.* However, these statutory provisions pertain to licenses for *retailers* of cigarettes.**

**is thus responsible for all the charges on the Accounts." (TAC, ¶ 28.)**

**• "From early to mid-November 2004, Abdo purchased $1,404,348.86 million worth of cigarettes at Costco on Bakersfield Wholesale's American Express cards. From November 19 through December 2, 2004, Abdo charged an additional $2,2778,972.11 worth of cigarettes at Costco." (TAC, ¶ 37.)**

**• "During his deposition in this case, Abdo testified that after Bakersfield Wholesale purchased the Costco Cigarettes in late 2004, he personally arranged for their resale to third parties. He also admitted that he stored the Costco Cigarettes at the Warehouse prior to their sale and kept the cash proceeds at the Warehouse thereafter." (TAC, ¶ 56.)**

**• Abdo testified at his deposition herein that as soon as he learned that American Express was demanding immediate payment of the amounts due to it [in December, 2004], Abdo ceased the operations of Bakersfield Wholesale and threw away all of its records." (TAC, ¶ 64).**

**David asserts that dismissal of the Seventh Claim for Relief is required because "as far as all of the appropriate legal entities were concerned, Abdo continued to be the sole owner of Bakersfield Wholesale at all points in time during 2004."[4]**

**David argues that American Express is attempting to proceed against him in the Seventh Cause of Action because Abdo is**

---

**[4]David argues that, in cases involving alter ego allegations, the allegations of the elements of the claim, including ownership, must be substantial and supported by some evidence. However, neither of the cases upon which he relies so holds. *Hockey v. Medbaker*, 30 F.Supp.2d 1209, 1211 n.1 (N.D.Cal.1998) and *Hokama v. E.F. Hutton & Co., Inc.*, 566 F.Supp. 636, 647 (C.D.Cal.1983), merely hold that a conclusory allegation of "alter ego" does not suffice to state a claim.**

**judgment proof, that American Express has not demonstrated that he had any ownership interest in Bakersfield Wholesale and has merely alleged facts from which it may be inferred that David "essentially acted as a periodic manager or employee of Bakersfield Wholesale." David cites *Riddle v. Leuschner*, *supra*, 51 Cal.2d 574, 580:**

> **It is undisputed that he held none of the stock, and there is no evidence that he had any interest as an owner in the business operated by either of the two corporations or that he had a right to share in any of the profits they might make. Instead, he received a monthly salary. Under all the circumstances, he is to be regarded as having been a managing employee of the two companies, and his control over their affairs must be treated as that which would be exercised by a managing agent rather than that of a shareholder or owner.**

**American Express responds that David's motion is based on the contention that Abdo is the nominal owner of 100% of the shares in Bakersfield Wholesale. However, American Express contends, in order to be held liable as an alter ego, the defendant need only have an *equitable* ownership in the relevant entity. *See Minton v. Cavaney*, 56 Cal.2d 576, 580 (1961):**

> **The evidence is ... undisputed that Cavaney was not only the secretary and treasurer of the corporation but was also a director. The evidence that Cavaney was to receive one-third of the shares to be issued supports an inference that he was an equitable owner (see *Riddle v. Leuschner, supra*, 51 Cal.2d 574, 580), and the evidence that for a time the records of the corporation were kept in Cavaney's office supports an inference that he actively participated in the conduct of the business. The trial court was not required to believe his statement that he was**

> **only a 'temporary' director and officer for 'accommodation.'**

***See also Roman Catholic Archbishop v. Superior Court*, 15 Cal.App.3d 405, 411 (1971)("The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation."); *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (2000)("Under the alter ego doctrine ... the courts will ignore the corporate entity and deem the corporations acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners."); *Tri-State Equipment v. United States*, 1997 WL 375264 (E.D.Cal.1997)("[E]quitable ownership has been inferred, despite the individual's lack of actual or substantial ownership of shares, provided other indicia of control are present.").**

**As American Express argues, the allegations of the TAC, allow the inference that David was the equitable owner of Bakersfield Wholesale at the time American Express' debt was incurred. David's arguments concerning the absence of documentary evidence filed with appropriate state agencies and the failure to obtain the required cigarette wholesale license go to ultimate proof, not pleading.**

**c. <u>EVIDENCE OBTAINED IN VIOLATION OF SCHEDULING CONFERENCE ORDER</u>.**

**David alternatively argues that the Seventh Claim for Relief should be dismissed because the new evidence to support the Seventh Claim for Relief was obtained after the August 31, 2005 discovery cut-off date set forth in the Scheduling Conference Order filed on April 6, 2005 (Doc. 69). David contends that American Express was required by Rule 16, Federal Rules of Civil Procedure, to obtain advance permission from the Court before conducting any discovery and that American Express did not seek or obtain any stipulation regarding the conduct of discovery. David asserts that the discovery has been conducted in "willful disobeyance of this Court's order, as well as of the Federal Rules of Civil Procedure" and that the Court "should suppress the evidence as a sanction for Plaintiff's willful and intentional disobeyance". David argues that American Express' contention that it discovered this evidence since issuance of the September 28, 2005 Order dismissing the alter ego claim with leave to amend is irrelevant:**

> **The Plaintiff chose the time and place of this litigation, and chose when to bring David Aezah into this litigation as a defendant. Plaintiff has controlled the pace and speed of this litigation since it's commencement. It is Plaintiff's responsibility to ensure that it has it's facts lined up, and has sufficient facts to support its claims at the time they are made ....**
>
> **Essentially, what the Plaintiff seeks is permission to ignore and eviscerate the requirements of the Federal Rules of Civil Procedure, and more particularly FRCP 12. Plaintiff's apparent position is that it should be allowed to have the motion decided**

> **adversely to it, yet still be able to conduct future discovery, learn additional new facts, and reassert the cause of action. Under Plaintiff's logic and position, FRCP 12 is converted from a tool to manage proceedings and allow a defendant to narrow the action against it and require definite pleadings into a notification to the Plaintiff that it needs to conduct further discovery.**

**As quoted above in the Declaration of Ira Glauber, counsel for David, Mr. Tucker, and Mr. Glauber conducted the discovery following the September 28, 2005 Order without objection from Mr. Tucker and with the understanding that the Scheduling Conference Order would be amended subsequently. David, through his attorney, could have sought a protective order precluding further discovery as being in violation of the Scheduling Order, but did not. Of course, American Express should have sought modification of the Scheduling Order, but did not. Rule 16(b) does provide: "A schedule shall not be modified except upon a showing of good cause and by leave of the district judge ...."**

**This action was commenced on December 21, 2004. David was not named as a defendant until the First Amended Complaint was filed on March 22, 2005. At the time of the scheduling conference on March 31, 2005, David had not yet appeared in the action. The Scheduling Conference Order was filed on April 6, 2005. The Scheduling Order has since been modified by Orders filed on March 7, 2007 (Doc. 243) and on June 19, 2007 (Doc. 299). David's contention that the Seventh Claim for Relief be dismissed because evidence to support it was obtained in violation of the March 31, 2005 Scheduling Conference Order and**

**in violation of Rule 16 exalts form over substance under the circumstances of this action and ignores the failure the failure of David's then counsel to make any objection to discovery on this ground.**

**The motion to dismiss the Seventh Claim for Relief on this ground is DENIED.**

**4. NINTH CLAIM FOR RELIEF FOR CONSPIRACY TO COMMIT FRAUDULENT CONVEYANCE.**

**The Ninth Claim for Relief is alleged against David for conspiracy to commit fraudulent conveyance. The Ninth Claim for Relief alleges *inter alia* that, based on the preceding allegations of the TAC, "beginning in or about December 2004, David and Abdo conspired together to fraudulently transfer the Costco Cigarettes, the proceeds from their sale, and the Bakersfield Wholesale Assets from Bakersfield Wholesale to one or more of the following persons: (1) David; (2) Bakersfield Grocery, David's wholly owned and unincorporated business; (3) DAI, or (4) Abdo" and that "David intentionally conspired to effect such fraudulent transfers with Abdo, and actively participated in such transfers, in order to defraud American Express and to hinder American Express' ability to collect monies due it as a result of Bakersfield Wholesale's use of American Express credit cards."**

**David moves to dismiss the Ninth Claim for Relief, arguing that the allegations of the TAC do not suffice to satisfy the heightened pleading requirements applicable to a conspiracy the**

**object of which is fraudulent. *See Wasco Products v. Southwall Technologies*, 435 F.3d 989, 991 (9th Cir.), *cert. denied*, ___ U.S. ___, 127 S.Ct. 83 (2006)("Based on these precedents and the plain language of Rule 9(b), we hold that under federal law a plaintiff must plead, at a minimum, the basic elements of a civil conspiracy if the object of the conspiracy is fraudulent."). David contends American Express has not pled any facts showing the existence of an agreement, or the terms of the agreement, asserting:**

> **A review of the TAC fails to reveal any description of the terms of the agreement, or anything to demonstrate that an agreement even existed. Instead, the Plaintiff relies on facially neutral facts, and attempts to combine and cast them to create an [sic] conspiracy agreement where it cannot show one exists.**

**In *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511, 1521 (N.D.Cal.1990), cited with approval by the Ninth Circuit in *Wasco Products v. Southwall Technologies*, the District Court explained:**

> **To survive a motion to dismiss, plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement. *Roberts*, 670 F.Supp. at 1484 (proof of a conspiracy does not require a showing of an explicit agreement; a demonstration of a tacit agreement is enough) ... It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement ....**

**"'[T]he existence of a conspiracy "may sometimes be inferred from the nature of the acts done, the relations of the parties, the**

**interests of the alleged conspirators, and other circumstances."'" *Southern Union Co. v. Southwest Gas Corp.*, 165 F.Supp.2d 1010, 1021 (D.Ariz.2001), citing, *In re Sunset Bay Associates,* 944 F.2d 1503, 1517 (9th Cir.1991).**

**Given these standards, the allegations of the TAC suffice to allege the existence of an agreement between Abdo and David to conceal assets in an attempt to defraud American Express.[5]**

**Dismissal of the Ninth Claim for Relief for failure to state a claim is DENIED.**

**B. MOTION TO STRIKE.**

**David moves pursuant to Rule 12(f), Federal Rules of Civil Procedure, to strike American Express' request for attorneys' fees.[6]**

**Rule 12(f) provides in pertinent part that the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored and infrequently granted. *Neveu v. City of Fresno,* 392 F.Supp.2d 1159, 1170 (E.D.Cal.2005). A motion to strike should not be granted unless it is clear that**

---

**[5]American Express also refers to evidence presented during the preliminary injunction proceedings and contends that the Court made findings of fact that American Express had presented clear and convincing evidence that David and Abdo conspired to fraudulently transfer assets. David objects to the consideration of this evidence in resolving the motion to dismiss and further contends that such a finding is not reflected on the docket.**

**[6]David also moves to strike the Seventh Claim for Relief on the same grounds as he moved to dismiss it. Because dismissal of the Seventh Claim for Relief is denied, the motion to strike is denied as well.**

**the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Id.* The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that might arise from litigating spurious issues by dispensing with those issues prior to trial. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994).**

**David moves to strike the prayer for attorneys' fees, contending that, under California law, a prevailing party is not entitled to attorneys' fees unless specifically provided for by contract or by statute. *Shoals v. Home Depot, Inc.*, 422 F.Supp.2d 1183, 1191 (E.D.Cal.2006), citing California Code of Civil Procedure § 1021. David asserts that the TAC does not demonstrate the existence of any contract between David, Bakersfield Grocery or DAI and American Express or any statutory basis for attorneys' fees.**

**American Express, impliedly conceding that no independent contractual or statutory basis exists for an award of attorneys' fees against Defendants, argues that, if it prevails on the Seventh Claim for Relief, it will be entitled to attorneys' fees against David based on the attorneys' fees provisions in its charge cards. *See Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 129 (1979):**

> **Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation ..., defendants would have been liable on the notes. Since they would have been liable for attorney's**

> fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed.

David alternatively argues the Court should consider the prayer for attorneys' fees stricken because American Express has previously waived their right to recover them.

American Express moved for default judgment against Abdo and Bakersfield Wholesale. In its motion for default judgment, American Express asserted that the operative agreement "awards American Express attorney's fees equal to 15% of the outstanding balance in the event that litigation is commenced to collect any amounts due under the agreement." However, in the Memorandum Decision granting the motion for default judgment filed on July 15, 2005 (Doc. 103), the Court stated: "Plaintiff's counsel waived their right to recover attorneys' fees at the July 11, 2005 oral argument on the motion for default [sic]."

American Express argues that it never waived or otherwise forfeited its right to seek attorneys' fees against David, Bakersfield Grocery and/or DAI because of the concession made during the hearing on the motion for default judgment against Abdo and Bakersfield Wholesale.

American Express argues that the issue of attorneys' fees was not actually litigated in the proceedings for default judgment. American Express cites *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir.2001):

> The party asserting collateral estoppel must show that the estopped issue is identical to

> **an issue actually litigated and decided in the previous action ... Preclusive force attaches only to issues that were necessary to support the judgment in the prior action ... Litigants are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action.**

**Relying on these principles, American Express contends that the issue of attorneys' fees was not actually litigated in the default judgment proceedings:**

> **At no time did this Court ever conclude that attorneys' fees were unavailable pursuant to the underlying Cardmember Agreement as a matter of law. Rather, attorneys' fees were not sought at the election [of] American Express as a matter of convenience in order to expedite the entry of a default judgment and dispense with the need for further hearings as to the defaulting defendants only. American Express was certain that seeking attorneys' fees would be an exercise in futility because the defaulting defendants had denuded themselves of assets and would not be able to satisfy even a fraction of the $3.6 million awarded under the default judgment.**

**American Express further contends that "the Court's finding with respect to attorneys' fees was purely incidental, as well as clearly specific to the defaulting defendants only." Finally, American Express asserts, the claims for attorneys' fees are not identical:**

> **First, American Express seeks attorneys' fees against the Defendants on its claims for alter ego and successor liability, which are different from the claims upon which it obtained a default judgment against the defaulting defendants. Second, the bulk of American Express' legal fees have been incurred after the entry of the default judgment, which cannot under any conceivable**

> interpretation constitute a waiver or relinquishment to seek those subsequently incurred fees against the Defendants.

Defendants reply that, even if American Express' claim for alter ego liability alleged in the Seventh Claim for Relief is ultimately sustained, American Express is barred by the waiver:

> [T]he alter ego doctrine would merely mean that David is held liable for the actions of [Bakersfield Wholesale] as the owner of [Bakersfield Wholesale]. As Plaintiff had already waived its right to collect from BWF, this would mean the waiver would apply to shield David from attorneys fees.

David's arguments pertain to proof, not pleading. There is no basis at this juncture to strike the prayer for attorneys' fees against David.[7]

C. AMERICAN EXPRESS' CROSS-MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927.

Because American Express withdrew its cross-motion for attorneys' fees pursuant to 28 U.S.C. § 1927 at the hearing, it is not discussed further in this memorandum decision and is DENIED.

CONCLUSION

For the reasons stated above and at the hearing on July 25, 2007,

1. Defendants David Aezah, Bakersfield Grocery Wholesale,

---

[7] In their reply brief, Defendants assert for the first time that there is no basis for an award of attorneys' fees against DAI. Courts generally decline to consider arguments raised for the first time in a reply brief. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992); *United States v. Boyce*, 148 F.Supp.2d 1069, 1085 (S.D.Cal.2001).

**and Dave Aezah Investment, Inc.'s motions to dismiss and to strike are DENIED;**

**2. American Express' cross-motion for sanctions pursuant to 28 U.S.C. § 1927 is DENIED.**

IT IS SO ORDERED.

**Dated: August 23, 2007**

**/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE

